Gerry Fagan
Adam J. Tunning
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Gerry.Fagan@moultonbellingham.com
Adam.Tunning@moultonbellingham.com

        Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| PAUL CARAWAY,<br><br>                    Plaintiff,<br><br>    -vs-<br><br>CITY OF COLUMBUS, GARY WOLTERMANN and WILLIAM PRONOVOST, individually and as agents,<br><br>                    Defendants. | Case No. CV 16-139-BLG-TJC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE** |

## <u>INTRODUCTION</u>

The Court should deny Plaintiff's Motions in Limine. (Doc# 44.) Plaintiff's first motion asks the court to exclude "or substantially limit" collateral evidence related to his termination. Plaintiff's motion does not identify specific evidence to be excluded or "limited" other than to broadly reference any evidence "gleaned"

from the underlying criminal investigation. This motion is overly broad and undoubtedly incorporates at least some admissible evidence. Therefore, it should be denied in favor of specified objections at trial.

Plaintiff's second motion asks the Court to exclude all evidence of his other income sources. Plaintiff suggests these collateral sources are inadmissible because they cannot be used to offset his damages. Plaintiff's argument overlooks the relevancy of these income sources. Despite seeking damages for an additional six years of employment, Plaintiff readily admitted he was actively considering retirement prior to his discharge. Central to this consideration was Plaintiff's ongoing receipt of a pension from his prior employment as a Sheriff's deputy as well as his wife's disability benefits and other earnings. Since this other income is directly relevant to Plaintiff's intention and ability to retire it is admissible to rebut his damages claim seeking up to six years lost wages.

## ARGUMENT

### I.     Evidence of Plaintiff's misconduct.

Plaintiff requests an all-encompassing order in limine precluding the admission of "evidence collateral to the reasons contained in the pre-termination and termination letters." (Doc# 44, p. 3.) This motion is overly broad, does not seek the exclusion of specific evidence, and should not be granted. *See e.g. In re Homestore.com, Inc.,* 2011 WL 291176, at *13 (C.D. Cal. Jan. 25, 2011) (denying motion in limine as "over-broad" because party had "not provided the Court with

the specific evidence claimed to be inadmissible.") citing *Lopez v. Chula Vista Police Dept.,* 2010 WL 6850154, at *7 (S.D.Cal. Feb. 12, 2010) (denying defendants' motion *in limine* on the grounds it was vague and over-broad).

Plaintiff sued Defendants in September 2016 alleging they failed to provide sufficient process as it related to his termination. (See Docs# 1, 3 & 9.) In addition, Plaintiff has moved to add a claim (after discovery had closed and after Defendants moved for summary judgment) alleging the City did not have good cause for his termination. (Doc# 33.)

All claims have their origin in a July 2015 allegation of sexual assault against Plaintiff. The allegation resulted in Plaintiff's suspension from work and an independent six-week investigation conducted by Montana's Department of Criminal Investigation. Upon completion of the investigation, the City was informed by the independent prosecutor no charges would be filed but Plaintiff had acted inappropriately in work settings and had serious credibility issues. The day after the criminal investigation concluded, the City began its own investigation into Plaintiff's misconduct by interviewing him on a wide-range of topics concerning his employment. This interview and the City's investigation necessarily included topics which had arisen during the criminal investigation. The City's investigation culminated in its November 6, 2015 pre-termination and November 20, 2015 termination letters. These letters set forth the reasons for Plaintiff's termination.

This general set of facts is relevant to all claims and must be presented to the jury. While the full content of the criminal investigation is not necessarily central to those facts, issues raised in the criminal investigation naturally spilled over into the City's employment investigation and ultimately the termination letters. In other words, some information "gleaned" from the criminal investigation was presented to Caraway during his employment investigation interview, became part of his employment investigation, and ended up in the termination letters. (*See e.g.* Docs# 31-3 & 31-10.) For example, Plaintiff's comments about "spanking" a female associate working for Stillwater County were initially derived from the female's statement during the criminal investigation and presented to Plaintiff in the termination letters. (*See e.g.* Docs# 31-4, 31-9, 31-10 & 31-11.) As a result, it would be inappropriate to issue a blanket prohibition on such evidence prior to trial.

Further, Plaintiff's references to the criminal investigation as a "witch hunt" and a "character assassination" would open the door to a more-detailed examination of the investigation. If Plaintiff maintains such a posture at trial, the City should be allowed to rebut this self-serving and misleading description of the independent criminal investigation conducted by the Montana Department of Criminal Investigations.

Later in his argument, Plaintiff cites several cases for the proposition that the City cannot argue he was terminated for reasons outside of its termination letters. (Doc# 44, pp. 4-5.) Of course, this issue would be moot if Plaintiff is denied leave

to add his lack of "good cause" claim. In any event, the City has no intention to make such an argument. The reasons set forth in the City's terminations letters provided more than good cause for terminating Plaintiff's employment. Those issues, though, require the admission of additional evidence outside the letters themselves to help the jury understand the context of the charge and why it was severe enough to merit termination. Therefore, a complete bar on evidence outside the termination letters or which could be "gleaned" from the criminal investigation is not proper at this time.

Ultimately, Plaintiff has not set out specific evidence meriting exclusion. The City has no intention to present irrelevant evidence at trial or argue Plaintiff was terminated for reasons outside the terminations letters. But, the full story should be presented to the jury. Therefore, a broad restriction on Defendants' ability to present evidence would severely prejudice the defense and should be denied.

## II.      Evidence of Plaintiff's Income.

Plaintiff is also requesting an order completely barring the City from presenting evidence of Plaintiff's income from other sources. (Doc# 44, pp. 5-8.) Plaintiff argues these other sources of income "cannot be introduced to offset the amount of otherwise allowable" lost earnings. (*Id.*, p. 5.) But, that is not the purpose of introducing this evidence at trial. Rather, Plaintiff and his wife's pension, disability benefits, and other sources of income are directly relevant to rebut his assertion he intended to work until age 62.

Plaintiff was 55 years-old at the time of his termination in November 2015. Just a couple months earlier, in September 2015 during his interview with Chief Pronovost, Plaintiff suggested he wanted to work "another two or three years" or until he was 57 or 58. (Doc# 31-3, p. 27.) During his deposition, Plaintiff also suggested he considered retirement "every year." (Caraway Deposition, p. 170:2-4.) Therefore, there is a question of fact when Plaintiff would have retired and Defendants are entitled to present evidence which makes it "less probable" that he would have worked through age 62. Fed. R. Evid. 401.

Prior to working for the City, Plaintiff had already retired as a deputy sheriff and was receiving full pension benefits. In addition, his wife receives permanent disability benefits from the Tucson, Arizona police department, along with income from running a property management business. This income evidence supports the conclusion Plaintiff was already receiving significant retirement income and would have retired long before he turned 62. As a result, it is relevant and admissible.

Defendants have no intention to offer evidence of unemployment insurance benefits or other collateral sources (unless Plaintiff opens the door) to reduce the amount of lost wages, if any. But, Plaintiff readily admits he was actively considering retirement. Therefore, the jury should be allowed to hear evidence concerning his household's existing retirement income which makes it less likely he would have worked through age 62.

## CONCLUSION

Defendants respectfully request the Court deny Plaintiff's Motions in Limine. The first motion is overly broad and does not identify specific evidence. Plaintiff's second motion misconstrues the relevancy of Plaintiff's existing retirement income. Therefore, the motions should be denied.

**DATED** this 13th day of October, 2017.

MOULTON BELLINGHAM PC

By ___/s/Adam Tunning_____
GERRY FAGAN
ADAM J. TUNNING
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559

## CERTIFICATE OF COMPLIANCE

I certify that this Brief contains 1286 words (excluding the caption and certificates of compliance), as calculated by my word processing software, in compliance with L.R. 7.1(d)(2)(E).

MOULTON BELLINGHAM PC

By    /s/Adam Tunning     
     GERRY FAGAN
     ADAM J. TUNNING
     27 North 27th Street, Suite 1900
     P.O. Box 2559
     Billings, Montana 59103-2559