IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PAUL CARAWAY,<br><br>                    Plaintiff,<br><br>vs.<br><br>TOWN OF COLUMBUS, GARY WOLTERMANN, and WILLIAM PRONOVOST, Individually and as Agents,<br><br>                    Defendants. | CV 16-139-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Paul Caraway, brings this action against the Town of Columbus ("Columbus" or "the City"), and individual Defendants Gary Woltermann and William Pronovost (collectively, the "Individual Defendants") (when referring to the City and the Individual Defendants, "Defendants"), in relation to the termination of his employment from the Columbus Police Department. At all times pertinent, Woltermann was Mayor of the Town of Columbus, and Pronovost was the Chief of Police. Caraway asserts claims for alleged due process violations under 42 U.S.C. § 1983, and for the alleged violation of the Montana Wrongful Discharge from Employment Act ("WDEA").

Presently before the Court are the parties' cross motions for summary judgment (Docs. 29, 36), and Caraway's motion for leave to file a third amended

complaint (Doc. 33). Having considered the parties' submissions, the Court finds

that the Defendants' motion for summary judgment should be **GRANTED**.

Caraway's motion for summary judgement should be **DENIED**, and his motion for

leave to amend his complaint also should be **DENIED**. Finally, Caraway's

Motions in Limine (Doc. 44) should be **DENIED** as moot.

# I.     FACTUAL BACKGROUND[1]

Caraway was employed by Columbus as a police officer from 2008-2015.

(Doc. 35 at ¶ 1.) On or about July 3, 2015, a Stillwater County female dispatch

officer accused Caraway of sexual assault. (*Id.* at ¶ 5.) Because of the nature of

the accusation, Caraway was placed on suspension, with pay, on July 6, 2015. (*Id.*

at ¶ 6.)

The City then referred the matter for investigation to the Montana

Department of Justice, Division of Criminal Investigation. (*Id.* at ¶ 7.) The

criminal investigation was concluded on September 28, 2015. The Department of

Justice concluded that there was insufficient evidence to charge Caraway with

sexual assault, citing serious credibility issues with both Caraway and the alleged

victim. (*Id.* at ¶10.) Nevertheless, the Department also concluded that Caraway

---

[1] The background facts set forth here are relevant to the Court's determination of
the pending motions for summary judgment and are taken from the parties'
submissions and are undisputed except where indicated.

had "acted inappropriately in office settings. While Sgt. Caraway may want to characterize his actions as playful and that others willfully participated, his actions were not appropriate in any government office setting." (*Id.*)

Following the conclusion of the criminal investigation, the City conducted its own independent investigation. As part of the investigation, Caraway was interviewed by Chief Pronovost. At the conclusion of the City's investigation, Caraway was notified in writing by Mayor Woltermann on November 6, 2015, of the City's intent to terminate his employment. (Doc. 31-4.) Caraway was suspended without pay, effective immediately. (*Id.*) The letter further outlined the grounds for Caraway's proposed termination, and referred Caraway to the City's policy manuals for the City's grievance procedures. (*Id.*) Under the City's grievance procedure, an employee may send the Mayor a written grievance to respond to disciplinary action. The policy provides that the Mayor will investigate the grievance, and shall conclude his/her investigation and write a report. (Doc. 35 at ¶ 18.)

In accordance with the procedure, Caraway sent Mayor Woltermann a detailed response on November 11, 2015, denying the allegations against him. (*Id.* at ¶ 19; *see also* Doc. 34-1 at 40-53.) Chief Pronovost also provided additional information to the Mayor relative to matters raised in Caraway's grievance. (Doc. 35 at ¶ 21.) Mayor Woltermann responded to the grievance on November 20,

2015.  (*Id.* at ¶ 22; *see also* Doc. 34-1 at 62-64.)  He addressed the issues raised by Caraway, and notified Caraway that his employment with the City was terminated.

Under Montana law, Caraway had the right to appeal his termination to the City's police commission.  Mont. Code Ann. § 7-32-4164(2).  Caraway did not appeal his termination to the police commission.  He filed the instant action on September 8, 2016.  (Doc. 1.)

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

"Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present. A summary judgment cannot be granted if a genuine issue as to any material fact exists." *U.S. v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

## III.   DISCUSSION

### A.    Due Process: Property Interest

In Count I of his Second Amended Complaint, Caraway asserts that his termination constituted a deprivation of a property interest without due process of law. (Doc. 9 at ¶¶ 16-20.) Caraway principally argues that he was not provided with a post-termination hearing as required by the the United States Constitution.

The Defendants respond that Caraway was provided with adequate process. They assert he was provided with notice and an opportunity to contest the grounds of his termination before he was discharged, and also had a right under Montana statute to appeal his subsequent termination to the City's police commission. They contend that the availability of both a pre-termination and post-termination process

was sufficient to satisfy any due process requirement, and that no constitutional violation occurred. The individual defendants also maintain that they are entitled to qualified immunity on Caraway's constitutional claims.

"[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985). A procedural due process claim brought under 42 U.S.C. § 1983 has two requirements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir. 1998).

The Defendants do not appear to dispute that Caraway can meet the first requirement. It is well established that state law can create a property interest in continued employment, and Defendants do not contest that Caraway had such a property interest here. *See Loudermill*, 470 U.S. at 538-39. It is also undisputed that Caraway was deprived of that property interest when his employment with the City was terminated. Therefore, the only question is whether the deprivation was accompanied by adequate procedural protections.

In *Loudermill,* the Supreme Court found due process is satisfied if a terminated employee with a protected property interest is "provided [with] a pretermination opportunity to respond, coupled with post-termination

administrative procedures" provided by state law.  *Id.* at 547-48.  When paired with a more comprehensive post-termination hearing, the pre-termination hearing "need not be elaborate."  *Id.* at 545.  The hearing "need not definitively resolve the propriety of the discharge."  *Id.* at 545.  It is only an "initial check" on the propriety of the decision, and "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Id.* at 545-46.  The employee is only "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Id.* at 546.

   In considering *Loudermill*, the Ninth Circuit summarized the "rather meager requirements" of a pre-deprivation hearing as consisting of: "(1) oral or written notice to the employee of the 'charges' against him; (2) an explanation of the employer's evidence; and (3) an opportunity to respond, either in person or in writing."  *Brewster*, 149 F.3d at 986.  Caraway does not appear to argue that the pre-termination process provided by the City lacked any of these requirements. The undisputed facts establish that Mayor Woltermann provided Caraway with written notice of the allegations brought against him, the notice outlined the evidence in support of those allegations, and Caraway was given the opportunity to respond in writing.  Therefore, the pre-termination process provided by the City complied with the requirements of due process.

As to a post-termination hearing, Montana law provided Caraway with a full opportunity to contest his termination. Montana law requires that every city or town with more than three full time law enforcement officers form a police commission. Mont. Code Ann. § 7-32-4151. A member of a Montana police force who is disciplined, suspended or discharged as a result of a decision by a town or its mayor has a right to appeal to the police commission. Mont. Code Ann. § 7-32-4164(2). The police commission is required to hear and determine any appeal "according to the rules of evidence applicable to courts of record in the state." Mont. Code Ann. § 7-32-4155. All hearings are open to the public. Mont. Code Ann. § 7-32-4158. The officer has the right to be present, to be represented by counsel, to be heard, and to submit evidence. Mont. Code Ann. § 7-32-4157. The commission also has the power of subpoena to compel the attendance of witnesses at its hearings. Mont. Code Ann. § 7-32-4159. After a hearing, the commission has the authority to "sustain, modify, or overrule the disciplinary order of the mayor." Mont. Code Ann. § 7-32-4160. Finally, if an officer is dissatisfied with the commission's decision, he has the right to appeal the decision to Montana state district court, which "has jurisdiction to review all questions of fact and all questions of law in a suit brought by any officer or member of the police force." Mont. Code Ann. § 7-32-4164.

Consequently, just as in *Loudermill,* Caraway had a full post-termination process available to contest the grounds for his termination.  Caraway does not dispute either the availability of this process or its adequacy.  Instead, he simply points out that he "was entitled to a post-termination review process before the Police Commission" (Doc. 34 at 22), and that "the unavailability or inadequacy of a post-termination process at what would be considered a meaningful or opportune time may, itself, be the source of a distinct due process violation."  (Doc. 47 at 11.)  While these statements undoubtedly are true, it is not disputed that the police commission process was available to Caraway, and he had the opportunity to invoke it immediately upon his termination.  Thus, it was both available and immediately accessible.

Caraway also sets forth an extensive discussion of Magistrate Judge Carolyn Ostby's Findings and Recommendations on summary judgment in *Reinlasoder v. City of Colstrip*, CV 12-107-BLG-SEH-CSO (D. Mont. Nov. 14, 2013 (Doc. 39)).  *Reinlasoder* involved the termination of a police chief by the City of Colstrip, Montana.  Caraway points out that the City of Colstrip gave notice to the terminated chief that he had the right to proceed before the police commission, and the city's police commission actually held a hearing despite the chief's lack of participation.  But the fact that the City of Colstrip proceeded in that fashion does not establish that such a procedure is required by either state law or by

constitutional due process, and Judge Ostby certainly did not make any finding to that effect.

In addition, to the extent Caraway maintains that his failure to avail himself of his post-termination remedies is excused by his alleged ignorance of the process, he is mistaken. The Eighth Circuit directly addressed this issue in *Krentz v. Robertson*, 228 F.3d 897 (8th Cir. 2000). In that case, a former fire chief brought an action alleging procedural due process violations in connection with his termination. As in this case, the chief could have availed himself of a post-termination process under Missouri law to challenge his termination, but failed to do so. The Eighth Circuit found this was fatal to his procedural due process claim, pointing out that "[o]ur cases explain that an employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state." *Id.* at 904.

The Eighth Circuit Court further rejected the fire chief's contention that his failure to resort to the state's process should be excused because he was unaware of the procedure. The Eighth Circuit found "[h]is contention rests upon legal (rather than factual) misunderstanding. And in Missouri, '[p]ersons are conclusively presumed to know the law.' Krenz 'could have…ascertained' the applicability of [the post-termination procedures] 'from a reading of the statutes

and pertinent cases.'" *Id.* at 904-05 (quoting *Missouri Highway and Transp. Comm'n v. Meyers*, 785 S.W.2d 70, 75 (Mo. Ct. App. 2000)) (citations omitted).

Montana law is equally clear on this principle. The Montana Supreme Court has repeatedly charged individuals with knowledge of existing law. *See e.g.*, *State v. G'Stohl,* 223 P.3d 926, 929 (Mont. 2010) ("people are presumed to know the law.") Therefore, Caraway is charged with knowledge of the appeal procedures provided by Montana Statute.

Moreover, Caraway acknowledges that he acquired actual knowledge of his right to appeal at some point following his termination. Although it is not entirely clear when he acquired this knowledge, he states here that it was approximately six months after his termination. (Doc. 47 at 9-10.) Nevertheless, there is no statute of limitations restricting the time in which to file an appeal before the police commission, and there is no evidence to establish that he could not have obtained a meaningful review when he learned of the procedure. He opted instead to wait several more months to file this action.

Therefore, the Court finds that Caraway was not deprived of a property interest without due process of law, and summary judgment should be granted as to Count I of his Second Amended Complaint.

/ / /

/ / /

## B. Due Process: Liberty Interest

Caraway maintains in Count II of his Second Amended Complaint that he was deprived of a liberty interest without due process. (Doc. 9 at ¶¶ 21-26.) "[A] terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). If stigmatizing information is published, the terminated employee is entitled to a "name-clearing" hearing. *Id.* Failure to provide such a hearing can constitute a violation of the Due Process Clause of the Fourteenth Amendment. *Id.*

Caraway maintains that the Defendants placed stigmatizing information in his personnel file, and otherwise published stigmatizing information to the public in connection with his termination. Caraway thus contends that he was entitled to a name-clearing hearing, which he alleges was not provided.

The Defendants dispute that placing stigmatizing information in Caraway's personnel constituted publication for due process purposes, since Montana law protects the disclosure of the personnel information.[2] The Defendants further

---

[2] The Ninth Circuit has determined that the placement of stigmatizing information in an employee's personnel file constitutes publication where personnel records are public documents under state law. *Cox*, 359 F.3d at 1112. This holding has been distinguished in cases where personnel records are not subject to public disclosure under state law. *See e.g.*, *Boggs v. Hoover*, 2009 WL 2447553 (D. Ore. 2009).

assert that they were not responsible for the publication of any other stigmatizing information regarding Caraway.

The Court finds that it is not necessary to resolve the issue of whether stigmatizing information was made public, or whether the Defendants can be held responsible for the publication.  As discussed below, even if stigmatizing information was published, Caraway was provided all the due process to which he was entitled.  Therefore, for purposes of the parties' motions for summary judgment, the Court will assume, without deciding, that stigmatizing information was published in connection with Caraway's discharge, and that due process required that he be provided with a name-clearing hearing.

While it is clear that a discharged employee is entitled to a name-clearing hearing when stigmatizing information is published in connection with his discharge, it is equally clear that he is not entitled to a separate hearing if he is given an adequate opportunity to respond in some other pre- or post-termination process.  In *Segal v. City of New York*, 459 F.3d 207 (2nd Cir. 2006), for example, an at-will government employee was recommended for termination from her teaching position with the New York Department of Education.[3]  She responded by

---

[3]  As an "at-will" employee, the plaintiff did not have a property interest in continued employment, but may still suffer a deprivation of a liberty interest in connection with the termination of her employment.  *Segal*, 459 F.3d at 212.

filing an action in federal district court, alleging, *inter alia*, that she was deprived of her liberty interest without due process.

After filing the action, the teacher was terminated. Her union then filed a "C-31 administrative appeal" on her behalf, but did not inform the teacher they had done so. Under the C-31 appeal process, the teacher would have been given the opportunity to challenge her termination. *Id.* at 210. Upon learning of the administrative appeal, however, the teacher advised that she did not wish to go through with the process. Thus, no hearing was held.

On appeal to the Second Circuit, the Court recognized that even a probationary employee "can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.'" *Id.* at 212 (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2nd Cir. 2004)). The Court referred to such an action as a "stigma-plus claim." *Id.* Nevertheless, the Court found that "the availability of adequate process defeats a stigma-plus claim." *Id.* at 213. It determined that the procedures provided by the C-31 hearing provided all of the process the teacher was entitled, and were sufficient to safeguard the teacher's "reputational and professional interests." *Id.* at 214. The Court found that the "C-31 regulations provides her with the means to clear her name, including the

opportunity to present evidence, call witnesses, cross-examine witnesses, and make an oral presentation through union-selected counsel." *Id.* at 216.

The Ninth Circuit has similarly found that a discharged employee is not entitled to a separate name-clearing hearing where existing procedures adequately serve that purpose. In *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998), for example, the Ninth Circuit found that the procedures provided by an arbitration hearing were sufficient to provide a tenured government employee with the opportunity to clear his name, defeating a liberty interest claim. The Ninth Circuit also has concluded that the protections afforded by a criminal trial provided a sufficient opportunity for a state employee to clear his name. *Ybarra v. Bastian*, 647 F.2d 891, 894 (9th Cir. 1981).[4]

---

[4] Several other decisions similarly find that a separate name-clearing hearing is not required if the terminated employee has procedures available to respond to published stigmatizing information. *See e.g.*, *Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir. 1980) (county employee not entitled to a separate name clearing hearing where he was provided post-termination hearing before county board); *Liotta v. Borough of Springdale*, 985 F.2d 119, 123 (3d Cir. 1993) (pre-termination hearing sufficient to provide name-clearing hearing); *Graham v. City of Philadelphia*, 402 F.3d 139, 147 (3rd Cir.2005) (former police officer not entitled to separate name-clearing hearing following criminal trial); *McCormick v. District of Columbia*, 899 F.Supp.2d 59, 67-69 (D. D.C. 2012) (post-termination administrative procedures provided for public employees satisfied the due process requirements of a name-clearing hearing).

In the present case, the Montana statutory procedures available to Caraway were more than sufficient to provide him with a name-clearing remedy. Just as with the C-31 appeal process in *Segal*, Caraway had the full opportunity to appeal his case to the Columbus Police Commission. Had he done so, he would have had the right to a full evidentiary hearing, and the additional right to appeal any commission decision to state district court.

Again, Caraway does not appear to dispute the adequacy of this process for a name-clearing hearing, but rather claims he was effectively deprived of a hearing because he did not receive notice of his right to invoke the process. In support of this position, Caraway relies principally on the Eleventh Circuit's decision in *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037 (11th Cir. 1987). *Buxton* involved the termination of a police officer for allegedly abusing a suspect while placing him under arrest. Stigmatizing information relative to his termination was placed in his personnel file. The officer asserted that such placement constituted publication of the information, since the officer's personnel files were public record under Florida law. That being the case, the officer asserted that his liberty interests were implicated, creating the due process right to a name-clearing hearing. The Eleventh Circuit agreed, finding both that placing stigmatizing information in the officer's personnel file constituted publication under Florida law, and that the officer was entitled to a name-clearing hearing.

As to the availability of such a hearing, the Plant City personnel rules provided for a grievance procedure which was available to all employees. The officer did not request a hearing, and contended that he was unaware of the process. The Eleventh Circuit found that the failure to utilize the procedure was "of no moment." *Id.* at 1046. The Court said that its role was to determine what was "constitutionally required when a liberty interest is implicated, not what may or may not have been available to [the officer]." *Id.* In that regard, the Court held "that a public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published. Notice of the right to such a hearing is required." *Id.* Caraway urges that this holding should be applied here, and he should be relieved of his failure to avail himself of the post-termination remedies provided by Montana law.

Since Montana law does not require notice of the right to a police commission hearing, the only way to impose such a notice requirement here is to find that it is constitutionally mandated. The *Buxton* decision provides ample analysis to support its finding that that placement of stigmatizing information in the officer's file constituted publication under Florida law, and it also provided full support for its finding that a name-clearing hearing was required. But the Court provided no analysis or support whatsoever for the proposition that notice of the

right to such a hearing is constitutionally mandated.  Caraway also has not

provided any additional analysis or support for that position here, and the Court

has found none in the numerous federal court decisions which discuss the

requirements for a name-clearing hearing.

The Court is more persuaded by the analysis of the Eighth Circuit in *Krentz*.

People are presumed to know the law.  Charged with that knowledge, an individual

cannot bypass a state's statutory procedures – that clearly provide procedural due

process – and then bring an action seeking damages for the alleged denial of that

right.

Accordingly, summary judgment also is appropriate as to Count II of

Caraway's Second Amended Complaint.

### C.     Qualified Immunity

The Individual Defendants assert that they are entitled to qualified immunity

for Caraway's due process claims.  Qualified immunity shields federal and state

officials from civil liability under 42 U.S.C. § 1983 if "their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To

determine whether an officer is entitled to qualified immunity, a court must

evaluate two independent questions: (1) whether the officer's conduct violated a

constitutional right, and (2) whether that right was clearly established at the time of

the incident." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The Court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first.  *Pearson*, 555 U.S. at 236.

 "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012)).  The Supreme Court has cautioned that clearly established law should not be defined at a high level of generality.  *Id.*  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*  It is not necessary to find a case directly on point, "in which the very action in question has been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged misconduct.  *Maraziti v. First Interstate Bank of Cal.*, 953 F.2d 520, 523 (9th Cir. 1992).  If the plaintiff meets this burden, the defendant then bears the burden to show that his actions were reasonable, even

if they might have violated the plaintiff's rights. *Id.* "[R]egardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

As discussed above, the Court finds that the Defendants did not violate Caraway's constitutional right to due process, and therefore summary judgment is appropriate on Counts I and II of the Second Amended Complaint. But even if the Court were to accept Caraway's argument and find that notice of his right to a post-termination hearing and name-clearing hearing was constitutionally required, the Individual Defendants would be entitled to qualified immunity. In short, if Caraway did have a constitutional right to notice, it was certainly not a clearly established right. There is no Supreme Court or Ninth Circuit precedent on the issue; and as discussed above, two other circuits are split on the issue.

In fact, with respect to a liberty interest claim, there is a substantial question whether Caraway was required to affirmatively request a name-clearing hearing. The majority of the federal circuit courts to address the issue have held that the employee must do so before bringing a liberty interest due process claim. *See e.g.*, *Winskowski v. City of Stephen*, 442 F.3d 1107, 111 (8th Cir. 2006) (employee who fails to request name-clearing hearing "cannot later sue for having been deprived

of it"); *Quinn v. Shirley*, 293 F.3d 315, 321 (6th Cir. 2002) (failure to request a name clearing hearing is fatal to a liberty interest claim); *Bledsoe v. City of Horn Lake, Mississippi*, 449 F.3d 650, 653-54 (5th Cir. 2006) (requiring proof that employee requested and was denied a name-clearing hearing). The Ninth Circuit has not addressed the issue, and the district courts within the circuit are almost evenly split on issue. *See Howard v. Contra Costa County*, 2014 WL 824218 (N.D. Cal. 2014) (recognizing conflict and collecting cases). Therefore, not only is it not clearly established that an employer must give notice of an employee's right to a name-clearing hearing, it is not at all clear whether an employee must affirmatively request such a hearing before he can allege a violation of his right to due process.

Summary judgment therefore is also appropriate as to Defendants Woltermann and Pronovost on the basis of qualified immunity.

## D.     Wrongful Discharge

In Count III of his Second Amended Complaint, Caraway asserts that the Town of Columbus violated the Montana Wrongful Discharge from Employment Act.[5]  (Doc. 9 at ¶¶ 27-29.)  Specifically, he alleges that the City violated the

---

[5] In his Second Amended Complaint, Caraway does not limit application of Count III to the Town of Columbus, but in his response to the Defendants' motion for summary judgment, he clarifies that "there obviously was no intent (nor legal bases) to include" the Individual Defendants in his wrongful discharge claim. (Doc. 34 at 36.)

provisions of its own written personnel policy in violation of Mont. Code Ann. § 39-2-904(1), which provides:

> (1) A discharge is wrongful only if:
> …
> (c) the employer violated the express provisions of its own written personnel policy.

Caraway alleges that the City violated the express provisions of its written personnel policy by (1) failing to involve Mayor Woltermann in Caraway's post-suspension interview; (2) maintaining documentation of a verbal warning issued to Caraway in 2009 regarding sexual harassment in Caraway's personnel file, rather than in Chief Pronovost's file; and (3) failing to properly investigate a 2009 complaint against Caraway for sexual harassment.

With respect to the first claim, Caraway repeatedly insists that the City's personnel policies require that the mayor "be involved in conducting an investigative interview." (Doc. 43 at 13.) But the actual written policy says no such thing. The pertinent portions of the City's disciplinary procedures state:

> The Mayor will task the supervisor to fully investigate and document situations that may require disciplinary action….The employee will be interviewed during the investigation process. Prior to the interview, the Mayor will inform the employee of the suspected violation and in general terms what the interview will be regarding.
>
> The supervisor and Mayor, as well as the employee, may request an attendee to accompany them in the interview, if desired. The attendee, however, will be permitted for observation only and will not be permitted to participate in the interview.

(Doc. 34-1 at 65.)

The "express provisions" of this personnel policy do not require that the mayor be involved in the actual investigative interview. It states that the mayor shall advise the employee of the suspected violation and nature of the interview prior the interview. It also contemplates that the mayor may be involved in the interview process by the provision allowing the mayor, supervisor or employee the right to request an attendee. But the policy does not expressly mandate that the mayor be involved in conducting the interview.

Caraway's other complaints allege policy violations six years prior to his termination. But the issues he has raised concerning where a reprimand was documented, and whether a prior allegation of misconduct was properly investigated, are simply irrelevant to Caraway's termination. Those matters may be relevant to Caraway's allegation that the 2009 allegation and reprimand were later made public, but they are not relevant to his actual termination in 2015. The only facts relevant to his termination are that Caraway had, in fact, been given prior warnings to stop making inappropriate comments of a sexual nature, and that he failed to heed those prior warnings.

The Court therefore finds that the Town of Columbus did not violate the express terms of its personnel policy in terminating Caraway, and summary judgment should be granted as to Count III of his Second Amended Complaint.

### E. Leave to Amend Complaint

Caraway also has filed a Motion for Leave to File Third Amended Complaint.  (Doc. 33.)  Caraway seeks to add an additional claim under the WDEA that his termination was not for good cause.  The Defendants oppose the motion.

On November 22, 2016, the parties submitted a joint discovery plan, stipulating to a deadline to amend pleadings for January 16, 2017, and a discovery deadline for July 31, 2017.  (Doc. 11 at 3.)  Following a scheduling conference with Judge Ostby on November 29, 2016, those dates were incorporated into the Court's scheduling order.  (Doc. 16 at 2.)

On July 25, 2017, the Defendants filed their motion for summary judgment. Prior to responding to the motion, Caraway filed a motion for leave to file a third amended complaint.  By the amendment, Caraway seeks to add the additional claim under Mont. Code Ann. § 39-2-904(1)(b) that his discharge was not for good cause.

In situations where the deadline for amendments to pleadings has passed, a party must show good cause for not seeking leave to amend within the court's scheduling order.  The good cause requirement is set forth in Judge Ostby's order ("[c]ontinuance of these deadlines will not be granted absent good cause"), and in Rule 16(b)(4) ("[a] schedule may only be modified for good cause and with the judge's consent").  *See also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294

(9th Cir. 2000). In *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), the Ninth Circuit explained that "[u]nlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Good cause to excuse noncompliance with the scheduling order exists if the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 Amendment)).

Prejudice to the opposing party may provide an additional reason to deny a motion to amend, but "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id*. at 609. "If that party was not diligent, the inquiry should end." *Id*.; *see also In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013) (upholding denial of motion to amend where "the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action").

If good cause exists for seeking amendment after the scheduling order's deadline, the Court then turns to Rule 15(a) to determine whether amendment should be allowed. "Although Federal Rule of Civil Procedure 15(a) provides that leave to amend 'shall be freely given when justice so requires,' it 'is not to be

granted automatically.'" *In re Western States*, 15 F.3d at 738 (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990)). Under Rule 15(a), the Ninth Circuit directs that courts consider the following five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Id.*

As noted above, Caraway seeks to amend his complaint to include the additional claim that the City did not have good cause to terminate his employment. The Court finds that Caraway did not act diligently in seeking to amend his complaint. He has amended his complaint on two previous occasions, and did not deem it appropriate on either occasion to include a claim challenging whether the City had good cause to terminate him. His current motion to amend was filed seven months after the Court's deadline to amend pleadings, after the deadline established for completion of discovery, and after the Defendants had moved for summary judgment.

Caraway's explanation for the delay is that he did not know the basis for the claim until he received the Department of Justice's investigative file in discovery in late May 2017, and had the opportunity to depose Mayor Woltermann and Chief Pronovost in late July 2017. Even if this is true, however, he does not adequately explain why this discovery was not undertaken earlier.

Moreover, it is difficult to understand why Caraway did not possess information to challenge the reasons for his termination. Caraway was provided with written notice of the grounds for his termination, and he was in a unique position to know whether the allegations against him were accurate. He certainly did not have any difficulty responding to those allegations during the grievance process. According to Caraway, he "submitted a categorical and detailed (rather than general) written response to the allegations that had been leveled against him." (Doc. 35 at 10.) Therefore, his current argument that he did not possess information to challenge whether his dismissal was for good cause is not persuasive.

In addition, even if the Court found "good cause" here, application of the Rule 15 factors would dictate denial of the motion to amend. While there is no indication that Caraway is acting in bad faith, the Court has found undue delay, and Caraway has already amended his complaint on two prior occasions. The Court also finds prejudice to the Defendants, which is the Rule 15 factor which "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Caraway has not previously challenged the grounds for his discharge in this action. His claims were all based on the procedures employed to terminate him; whether he was afforded due process in his termination, and whether the City

followed its written policies and procedures. The Defendants had no reason to conduct any discovery or otherwise defend whether the City had good grounds to terminate Caraway. Therefore, if the amendment is permitted, discovery in this matter would almost certainly have to be reopened. In addition, as the Defendants point out, they would likely need to retain an expert to testify why the grounds for Caraway's dismissal are disqualifying for a law enforcement officer.

In short, the litigation process would begin again, with a scheduling order allowing time for disclosure of experts, completion of discovery, and filing of additional pretrial motions. This obviously would be prejudicial to the Defendants who have timely completed discovery and filed their dispositive motions in compliance with the Court's scheduling order. For these reasons, the Ninth Circuit has found that amendments sought after the close of discovery are properly denied under Rule 15. *See e.g., Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.")

Therefore, given that Caraway has not shown good cause for the delay, and because the Defendants will be clearly prejudiced by his amendment at this stage of the process, Caraway's motion for leave to amend is denied.

/ / /

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows

(1)    Defendants' Motion for Summary Judgment (Doc. 29) is

**GRANTED**;

(2)    Caraway's Motion for Leave to File Third Amended Complaint (Doc.

33) is **DENIED**;

(3)    Caraway's Cross-Motion for Partial Summary Judgment Re Liability

(Doc. 36) is **DENIED**; and

(4)    Caraway's Motions in Limine (Doc. 44) are **DENIED** as moot.

JUDGMENT SHALL BE ENTERED ACCORDINGLY.

DATED this 30th day of March, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge